**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| vs. | ) | Criminal No. 2:20-0541-RMG |
| | ) | |
| Tearra Na'Asia Guthrie, | ) | |
| | ) | |
| Defendant. | ) | **ORDER** |
| | ) | |
| | ) | |

The Defendant came before the Court for sentencing on April 8, 2021 after previously entering a guilty plea to Civil Disorder in violation of 18 U.S.C. § 231(a)(3). A presentence report ("PSR") was prepared which established her base offense level to be 10 and her criminal history I, which would have produced a guideline range for incarceration of 0-6 months. The PSR, however, contained a recommendation to add an enhancement for the "federal crime of terrorism," which increased the Defendant's total offense level to 29, her criminal history to VI, and her guideline range to the statutory cap of five years. (Dkt. No. 19 at 7-8, 19-1 at 2).

The Defendant objected to the enhancement for the "federal crime of terrorism," and the Government indicated that it "consents to the objection under these circumstances but agrees that generally the terrorism enhancement could apply in a similar factual situation." (Dkt. No. 19-1 at 1). The Court sustained the objection of the Defendant and now issues this Order to provide guidance and clarification regarding the proper scope of the "federal crime of terrorism" enhancement.

Defendant participated with others in protests in downtown Charleston on May 30, 2020 relating to the death of George Floyd on May 25, 2020 at the hands of certain officers of the Minneapolis Police Department. One of the officers, Derek Chauvin, placed his knee on the

1

neck of Mr. Floyd for nine minutes.  When EMS officials arrived on the scene, they determined

Mr. Floyd had died.  The day following this incident, the Minneapolis Police Department fired

Chauvin and the other officers involved and on May 29, 2020 the State of Minnesota criminally

charged Chauvin with third degree murder and second degree manslaughter.

A small minority of the Charleston protesters, including Defendant, engaged in plainly

unlawful activities, including vandalizing property and burning an unoccupied police car.

Defendant admits to her participation in these activities and has pled guilty to Civil Disorder.

She has no prior history of any criminal offense remotely similar to her conduct on the night of

May 30, 2020.

Applying an enhancement under the Federal Sentencing Guidelines for the "federal crime

of terrorism" transforms a low level federal offense into a major criminal offense and propels

Defendant's minimal criminal history of I, the lowest level under the Sentencing Guidelines, into

the maximum level of VI, a category normally reserved for the worst recidivist defendants.  But

for the statutory cap of five years for Civil Disorder, Defendant's guidelines would be in the

range of 12 to 15 years.  The PSR explains the application of this enhancement based on the

statutory language and "the defendant's own statements and video footage indicates the conduct

was a direct response to the death of George Floyd and intended to intimidate and retaliate

against law enforcement."  (Dkt. No. 19 at ¶ 18).

The "federal crime of terrorism," 18 U.S.C. § 2332b(g)(5)(A), is defined as conduct

"calculated to influence or affect the conduct of government by intimidation or coercion, or to

retaliate against government conduct."  Additionally, the defendant must be shown to have

violated certain enumerated federal statutes, such as arson, bomb making, use of biological

weapons and the like. § 2332b(g)(5)(B).

2

The animating event triggering the Defendant's criminal conduct was the actions of allegedly rogue police officers who were immediately terminated and criminally prosecution for their role in the death of Mr. Floyd. The official government conduct of Minneapolis and the State of Minnesota was to condemn and prosecute the officers for the death of Mr. Floyd, not to endorse or defend their actions.

A similar factual situation arose in *United States v. Ansberry*, 976 F.3d 1108 (10th Cir. 2020), where a defendant unsuccessfully attempted to detonate a bomb in front of a police station in retaliation for the killing of a friend 45 years earlier by the town marshal. The defendant's friend was taken into police custody by the town marshal and was never seen alive again. Later, the victim's body was discovered in a remote canyon with a gunshot wound to the head. The town marshal was suspected in the death, but there was not sufficient physical evidence linking him to the crime. Instead, the marshal had his commission revoked and he left town. Many years later, the now former marshal, then living in a nursing home, confessed to the murder of the victim. *Id.* at 1112.

The defendant in *Ansberry* opposed a proposed enhancement for the "federal crime of terrorism," arguing that the criminal conduct of the town marshal did not constitute "government conduct" under the statute. The District Court overruled the Defendant's objection. The Tenth Circuit reversed the District Court because there was "record evidence" that the action in which the defendant was protesting, the murder of his friend at the hands of the town marshal, was not "conduct by the government, objectively defined." *Id*. at 1130.

The Court finds the reasoning of the Tenth Circuit persuasive. Otherwise, even the criminal conduct of rogue law enforcement officers acting in violation of their department's policy and state law would become the basis for enhancing the sentence of overzealous protesters

with the "federal crime of terrorism."   The conduct of those officers involved in Mr. Floyd's death cannot reasonably be characterized as "conduct by the government, objectively defined. *Id*.

This is not to excuse the criminal conduct of the Defendant.  She has been charged and pled guilty.  Enhancing her sentence with a terrorism charge exceeds the scope of the statutory language and common sense.

Based on the foregoing, the Court sustained the objection of the Defendant to the "federal crime of terrorism" enhancement.  The balance of the Court's reasoning regarding Defendant's sentence was set forth on the record during the sentencing hearing.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

April 8, 2021
Charleston, South Carolina